Morning is 410-0222 in re. Marriage of Dearth. For the appellant is Melissa McGrath, you are she? For the appellee is Michelle R. Mosby-Scott, you are she? Okay, Ms. McGrath, you may proceed. Good morning, Your Honor, counsel. May it please the court. Counsel. Your Honors, Julie Stewart, the appellee, succeeded in this case of getting the trial court to rewrite an order which was clear when it was written. And the order that the trial court disregarded despite it being pointed out in closing arguments, written closing arguments, was the most pertinent order. The order entered in July of 2002. That is when the trial court filed a written order which stated that the parties were to share in the cost of transporting the child. The trial court in this, in this case, with all due respect to it, went back and looked only at an agreed order that was entered in 2004. And the trial court decided what it thought that order should be in 2010. And in doing so required my client, or is ordering my client to pay almost $12,000 dating back to expenditures that were incurred as late as, or as early as, December of 2003. The order, if the order is ambiguous, Your Honors, the 2002 or the 2004 order, the court needed to look at the circumstances that existed at the time those orders were entered. Instead, what the court did is it only again looked to what the testimony was at the hearing in 2010. Yes, both parties testified they believe Jesse, who is now 12 years old and does have some handicaps, Jesse should not travel on his own. There was nothing that the trial court attempted to do, however, to look at what the circumstances were when the trial court determined whose obligations were going, who was going to be obligated to pay for the costs dating back to 2002. Looking to the circumstances then, Julie left the state of Illinois voluntarily. She had initially been granted custody of Jesse. He was, I think, approximately three years old when they divorced. Several months later, Julie decided to move to Oregon because she fell in love with someone else. Is there any question that the child had physical limitations? There is no question, Your Honor. And was it also understood, probably, that the child could not ride on the plane by himself? Both parties testified to that at the hearing in 2010, or late 2009, Your Honor. So did Donald offer to fly with him, too? No, he did not, Your Honor. And, in fact, I think the testimony established that, too. He understood from the initial order that was entered in 2002, he understood that he was obligated to pay one-half of Jesse's plane ticket. That that was what the order was. That's what he did when he made the payments that he made. One in 2003, and I believe one in 2005. To have the trial court now rewrite what the order was in 2002 is contrary to what the court should have done, and is wholly inequitable to Mr. Durth, who is saddled with the bulk of the expenses. What would have happened had this issue been raised in a timely fashion back in 2002? I couldn't tell you, Your Honor, because if you look to the 2002 order, I believe Judge Freese's intent is clear. His intent was they pay equally Jesse's expenses. I don't see anything in the record... Well, then why wouldn't he offer, if he thought that the child could not travel by himself, why wouldn't he offer to say, I'll take every other time, I'll go out with him, bring him out to the visitation. Because, Your Honor, he is, again, saddled with the bulk of the expenses for this child, has been since, at least since Julie left the state of Illinois. What did the agreement say? I'm sorry? What did the agreement say? Are you referring to... One half of the cost of transporting by yourself of Illinois. That was the court's July order, July 2002 order, said one half the cost of transporting the child. There was then an agreed order in March of 2004 which was only in response to a petition where Mr. Durth, at least in part to this appeal, Mr. Durth was seeking an order that Julie submits to him bills within thirty days of travel. So, within the 2004 agreed order, it wasn't at issue who was obligated to pay her expenses, and, in fact, the party's behaviors all the way up until these hearings in late 2009, the party's previous behaviors demonstrated that their understanding was that Mr. Durth was to pay one half of Jesse's transportation costs. That's what Mr. Durth... He became the custodial parent when she moved to Oregon, or was it Washington? No, Oregon, Your Honor, and yes he did. And, uh, there was a change in child support obligations at that time? Uh, Judge, I believe it was a number of months later that the first child support order was entered requiring Julie to pay approximately $88, like $160 a month. What had it been before that when she was the custodial parent? I'm sorry, Your Honor, I can't answer that. So it's $160 a month total was what Julie was to pay for child support? I believe it was around $88 bi-weekly. Uh, now the judge in 2010 raised that so that it's approximately $330, I want to say, Your Honor. But when you look, Your Honor, to the party's behaviors... Well, who would have... The child could not fly by himself, is that correct? Both parties agreed to that, Your Honor. So the mother said, well, I'm not going to fly with you. What happened? Judge, I believe the intention of the court in July of 2002 was to grant Julie visitation at all reasonable times and including in the state of Oregon, but that Mr. Durst would pay one half of transporting Jesse. If... Suppose Julie does not want to come and get him, they have to have a third party. Who pays for the third party? I believe Julie does, based on the July 2002 order. Where does it say that? I think it... Judge, if you look to the language that it's the cost of transporting the child, if you look to the... You would not count that as a cost of transporting the child that some third party had to go with it. Is that correct? I think, Your Honor, that the court's intention back then was Julie would be responsible for retrieving the child and returning the child to the state of Illinois. Your argument is it should be in Julie's dime, that's what the court intended all along, that the additional costs of the accompaniment would be Julie and she'd be paying for herself. Yes, Your Honor. And the reason I say that, Your Honor, is because we should only be looking at the circumstances at that time to determine why the court said what it said in that order. And the circumstances... She decided to leave the state of Illinois. She left her child behind. She didn't leave for any reason other than another individual. I'm not placing judgment on that. However, Donald Durst was then left to care for the child and to be saddled with all the responsibilities... Well, this kind of goes back to my first question. What do you think would have happened if Julie had said, wait a minute, I'm going to have to be, I or somebody else, or Donald is going to have to be flying with this child, because he can't fly by himself, so it's not just the cost of Jesse's transportation, back and forth visitation, but there's this additional cost, and that should be addressed in the order. And, and your honor, I think the court would have considered the circumstances which were Julie left. I guess, so your position is the judge would have likely said, well, Julie, hey, this is your visitation, you want to do it, Donald pay half of Jesse's cost, but the rest of it is all going to be on your dime. Your argument is that's what the conclusion would have been? And I would also think that the court would have said Donald is saddled with the bulk of Jesse's expenses, so yes, I'm going to put that at added responsibility. Was that built into the trial court's thinking on child support? I can't answer that, your honor. But that's your implication? Yes, it is. And again, even if you look to the party's behaviors, all the way up until at no time before April of 2009, did Julie raise any issue that he wasn't paying his percentage, he wasn't paying her expenses. He had written checks to her for the child's expenses. You look to, even in 2008, when she writes an email to Don Durth and says, why do I travel to come get the child? Because I could leave him on a plane just escorted, or with an airline escort. Clearly, even as of 2008, Julie had no understanding that Mr. Durth was responsible to pay her transportation costs. And for the court in 2010 to rewrite the orders and tell Mr. Durth, not only are you responsible for the bulk of his medical needs, all of his educational needs, etc., but now we're going to go back and require that you pay Julie $12,000 dating back to travel expenses in 2003. I think, number one, your honor, that the initial order was clear, and when you look to the intent of the parties, at that time, Mr. Durth was not obligated to pay her travel costs. If you look to the current state that the court had in front of it, and you look to the behaviors of the parties even then, at a minimum, it was inequitable for the court to go back and say, no, what the order really meant then was that you're going to pay half of Julie's $2,000 and now you're going to pay her $12,000. So at a minimum, if the trial court was going to rewrite the order, it should have only obligated Mr. Durth from the time the hearing took place to the future to have to pay those expenses. Thank you, your honors. Okay, thank you. Ms. Mosley-Scott? The appellant argues that the de novo standard of review, and you don't seem to be, at least as best I can tell from your brief, disputing that. Is that correct? I do not disagree that the interpretation of the contract, if it's ambiguous, would, the de novo standard would be applied. Our position, however, is there's nothing ambiguous, there's no ambiguity in either of the two orders that are at issue. I think the issue that there seems to be some major differences is that we do not believe there's been a rewrite of any order. Counsel, let me ask you this way. I can't speak for my colleagues, but what troubles me about this case is, on the one hand, you seem to have a good claim that the equity would say, hey, we have to split these costs and all that, should be 50-50 as far as the costs, or if not 50-50, then one of the parents should go out to Oregon, shouldn't be just a burden on Julie. The problem I have is that all of this is totally foreseeable from back in 2002, 2003, 2004, and Julie, who is the person who is, says in late 2009, I'm aggrieved by this situation, and Donald owes me money, doesn't ask the court to address it ever, and we're left with the situation that, well, the inference is clear, et cetera, as Judge Butler said now, and for seven years, more or less, let the situation continue without a peep until such time as, in fact, Donald causes this matter to come back in the court. You know, I mean, if nothing, it might not be technically latches, but at the minimum, it suggests that for all this time, since we're talking about a chunk of change here, that Julie, by her behavior, was acting in a fashion that she understood that this was the agreement and arrangement, and she had no complaint. Why am I not correct to view it that way? I think that that is an incorrect assessment of the testimony that was heard at trial. In fact, every time before this child traveled, or she traveled to pick up her child for visitation, she sent an email and sent verification of the total expenses for both she and the child. Now, it is undisputed that Mr. Durff's response was, I'm not, sometimes he would pay none of those expenses, sometimes he would choose to only pay half of the child's expenses, sometimes he would refuse to pay rental vehicle expenses, but his position- Well, let me ask you this way. Hasn't it been clear throughout the entire seven years that Donald's position is twofold? One, I'm not traveling to Oregon with Jesse, and two, I'm not paying your costs. Hasn't that been clear? I don't think he's ever deviated from that, has he? He's never paid her costs, but there have been occasions when he refused to even pay the minor child's costs. But then, the question is her costs. He's never agreed to pay her costs. Well, then, how is it that for seven years, if this is, in fact, a violation of the agreement that the parties reached and the judge approved, how is it for seven years she sat on her rights and suddenly says, oh, this has been the agreement all along? Doesn't this look like she's maybe understood it wasn't the agreement all along? No, I think, in fact, the evidence is exactly to the opposite. She knew he was obligated to pay for half of the expenses incurred on behalf of the child. How about hers? It's her expenses. Yes, but her expenses are a part of what was necessary in order and were incurred on behalf of the minor child. The reasons why she didn't take action, the transcripts would indicate there were numerous financial issues from my client over the period of the years. And if, in fact, Mr. Durst would have never interfered with her visitation, if he would have never filed a demand claiming that she owed him medical expenses, it is possible that my client, because of her limited income, she may have never come to court to address these issues. She very well may have done what she had to do in order to visit with her child. That seems to cut against the grain of common experience. If you don't have much money, because apparently she does not, if you're on the precipice of bankruptcy, which she was and took bankruptcy apparently, and there is a pot of money out there that you can access, it just is kind of contrary to my experience in life and in the practice of law that you don't go after the pot of money that you feel you're entitled to. But in order to go after this pot of money, she had to have money to pay a lawyer to go after the pot of money. This isn't a situation where she has a claim where she's a personal injury action. If it was as clear cut as you seem to indicate it was, I can't imagine that a lawyer would look at it and say, aha, not only does she have a pot of money, I have a pot of money for which to get paid. Yeah, I would say that that would be, that that's probably not consistent with common practice and custom impractices currently in the family law industry. But I will tell you this, in looking at the order, not what was, not guessing what was the intent of Judge Freese years ago, but if you look at the orders, there are only two orders in question here. And if you look at the plain language of the orders and you apply the language of those orders, there is, it is clear that both of these parties had an obligation to meet the expenses of this child in getting him here for visitation, which included the expenses of the person who was accompanying him. I would agree that if there was a- Judge, let me ask you this way. I want to go back and follow up on Justice Appleton's question, because your answer is good, at least in part, about it's going to cost money to try to get this man because I'm going to have to hire an attorney and I don't have much money to do that. But we have seven and a half years of communications between Julie and Donald about arrangements for Jesse's transportation. Did she ever, and this costs nothing, in an email or a letter, did she ever say, by the way, Donald, you're supposed to be paying half of my personal costs? Where does that appear? Yes, she did, in fact, prior to my involvement of the case. When did she do that? That was when she had a prior counsel who I believe subsequently passed away and then I came on board after that gentleman. But there was a, there was demands made. It was late in the game, probably in early 2008 where those requests were made. Was it back in 2002 or 2003? No, it was not. It wasn't even back when the case was before the court again, in 2004. How did that happen? Well, this issue was never in front of the court in regard to reimbursements and payment until it was in front of the court with Judge Butler. These issues... The circumstances with Jesse and travel were before the court in 2004, were they not? Well, there were two court orders entered, one of which was in 2004. Okay. But not the, but only... As long as you were there, how is it that this doesn't come up again if we now have a year and a half of his failure to do what the order required him to do in the first place? And more specifically, in that two year period, did you ever, in an email, or did her attorney ever, or anybody ever say, by the way, Donald, you owe me money. You should be paying half of my costs. Yes. I know that the counsel prior to me and myself made demands, obviously, for reimbursement of these expenses. There were periods of time when... Is that in the record? Correspondences with letters other than plea... Anything. Is there anywhere in the record that Julie, personally or through counsel, ever demanded of Donald before 2009, pay me half of my costs to accompany Jesse? I believe that there is testimony indicating that there were demands for payments once counsel became involved. I don't know if there's a written document showing a letter from counsel making that demand, but there was clearly an acknowledgment by Mr. Dirk with that he became aware that there was, in fact, this request for reimbursement, which he believed that he had no obligation to pay and refused to pay, because consistently he said she left. She left, it's her obligation to pay those expenses, even though the court orders are directly contrary to that. Nowhere does any court order reference what Mr. Dirk's position is. It doesn't say that she had the obligation to pay her own ticket. It does not in any way say that he doesn't have an obligation to share one half of the expenses related to getting this child here. In fact, the evidence at trial was exactly to the contrary. Both parties, and it was by agreement, there was not disputes in regard to the health issues of the child that he refused. And in fact, he said, he had told her and she testified. If you want to see him, come get him. I am not bringing him to you. I'm not traveling with you. I'm not traveling with him to get him to you. You left the state of Illinois, that's your obligation. But nowhere in a court order does that place that obligation on her. Both court orders say they have an equal obligation. The only obligation my client had was to provide verification of those expenses within 30 days, which she did. And in fact, she provided verification of those expenses in advance of the verification of those expenses. I understand how your client hasn't slept on her rights throughout these proceedings. If Donald, and Donald's been pretty clear, you may not approve or like that position of his, but there it's been. He knew he said that from the get-go. And your client, apparently in 2002, 2003, and 2004, never asked if it is, in fact, her position that the court intended or wanted Donald to pay half of her transportation costs, because everyone knew this was going to have to be accompanied, never made this part of the order, never asked it. It's entirely foreseeable from the get-go that she's going to have to be paying these costs. And Donald said, I'm not paying a dime. She sat on her rights. She never asked the court to intervene. She never asked the court to clarify. She never asked the court directly to say you have to do this. And for seven and a half years, this matter continues until such time as Donald brings the matter back in the court. And now, suddenly, it's come up. But Mr. Durth didn't provide any invoices for medical expenses until November of 2008. Neither of these parties can weigh their support application. What does that have to do with the issue before us? Well, because what your position is, why would a party not pursue this at an earlier date? Why would you sit on your rights? I think the reality is both these support obligations that were owed to both of these parties, travel expenses owed to my client, medical expenses owed to Mr. Durth, there is no statute of limitations on those. Except medical expenses are specifically covered in the order. Yeah, but so are travel expenses. No, not hers, Jessie's. Your argument is the implication is there. But it says one half of travel expenses incurred on behalf of the party's child. This child, both parties said, cannot travel alone. So they both agree it was absolutely necessary that a parent travel with the child. From the beginning, Donald, from the beginning, said I'm not paying for yours. So she knew that. She knew that in 2002. Why didn't she raise it in 2004 when he wasn't paying? But he also told her he wasn't, on occasion, paying for Jessie. When the court ordered a clinical. That's not a responsive answer. Jessie's costs aren't before us. Whatever he did or didn't do with Jessie. What's before us is your claim that all along he had to pay half of Julie's. That's correct. So in 2002, he says I'm not paying it. And sure enough, he doesn't pay it. And the matter is back before the court. And no comment of any kind, no request for relief of any kind, no nothing of any kind from your claim. There was a request for relief. The request for relief came in asking, and pleading was specifically filed, asking for reimbursement. There was no motion for clarification, if that's the relief that we might have seen if this issue would have erupted back in 2002 or 2004. Julie never asked the court to direct Donald to pay any of this or to clarify any ambiguity about it until 2009. We didn't believe there was ambiguity, Your Honor. But he wasn't paying. No, that is correct. So I mean, plus he says, just in case you think there's no ambiguity, I don't think I'm obligated. I'm not going to pay it. So it's not as if this was an oversight. You knew, she knew, whoever the counsel was, that until and unless the court changed the order, he was never going to pay. Isn't that correct? Well, but probably until the court ordered on reimbursements, he probably wasn't going to even pay the full amount of half of Jesse's expenses. I mean, this dispute was not specifically related to my client's travel expenses. But the issue before this court is. That is correct. I keep going back. We have no other issue before us here. That is true. So I keep asking about Julie's travel expenses. Donald made it clear from the get-go he's paying none of that. And Julie said and did nothing about it, even though the case was back before the court. She was going to visit her child regardless. He wouldn't participate in that. And your honor, to be quite honest with you, if there was no litigation on this matter and my client didn't have the funds to hire an attorney to file a rule against him, she would be continuing to this day to pay for travel expenses necessary for her to see her little boy, regardless of whether or not she could have been more aggressive and she could have created more conflict. Her priority has always been throughout the course of this trial to see her son. When the issue was back before the court in 2004, what additional expense would there have been to, when this case, the whole business was back before the court, to add, by the way, judge, Donald isn't paying his half of Julie's expenses, if in fact she believed it. I wasn't her attorney at that time. Well, that doesn't answer the question of what you would have done. It answers the question of what additional expense would there have been. Had you been her lawyer, what additional expense would there have been to raise that issue? Well, there would have been some additional expense and it probably would have been an appropriate time to raise it at that time. But I think this court would probably be surprised by the expense that it took in order to determine an amount, a judgment amount, that was doing only to my client in these past proceedings. And so at some point, the cost of fighting over it doesn't warrant the expenditures. And again, my client wanted to see her child. She had to pay these expenses in order to see her child. If she would not have done so, she would have not had a relationship with her child. And so I think my client chose, I'm going to pay for these expenses and see my son, versus take money that I have to have in order to pay travel expenses to pay a lawyer to try to get him to pay one half. But the law doesn't allow a waiver of those expenses even though she did. Louise McGrath argued that this was essentially the implicit agreement that the parties had reached. And Julie understood it as such, that she was going to be doing this on her own dime. And this is an after-the-fact view by Julie. Maybe I can make a claim here based on some ambiguity in the order. Why shouldn't we agree with that based upon her inaction all these years? The testimony between the parties did not establish that. Mr. Durth, in fact, indicated that there was a conflict. There was a disagreement in regard to whether or not he had to pay half of her expenses and half of the child. That was acknowledged during the testimony of both parties. This dispute existed. They knew that it existed. And in fact, as it relates to there being an agreement, there was no evidence of an agreement. There were multiple documents and emails provided to the court. None of them indicated an understanding between these parties or an agreement that she agreed. She didn't have an obligation to pay it. There were emails to indicate that he said, if you want to see him, you're going to pay the expense because I'm not going to pay it. And she testified in court, I made the decision to pay it because to not pay it meant I would not see my child. But that type of bullying conduct does not mean that this order should be rewritten. There is no rewriting of the order. If you look at the terminology of the two orders, it says, travel expenses incurred on behalf of the party's child. Half of the child's expenses and half of Julie's expenses were determined by the court to be necessary expenses incurred on behalf of the minor child, and in fact, was supported by the testimony of both parties. Could she have addressed this earlier? Absolutely. The reasons why she didn't was because she wanted to see her child. And she wanted to be able to have visitation and relationship with him. And she didn't have the money to litigate it. When he brought the issue before the court, she had no choice but to litigate it. Why? Well, because. Didn't have to litigate any of this. It cost no more additional money to litigate the issue of Julie's travel expenses in 2009 than it would have cost in 2004. But my client was already in court. She didn't have a choice not to be in court. She wasn't in court in 2004? Well, she was in court in 2009 in regard to monies that he claimed were owed to her, which the email exchanges clearly show her position was, I don't owe you money. You owe me money. And so that's why I think she chose to address it at that time, Your Honor. Thank you, counsel. Ms. McGrath? Thank you, Your Honor. Just very briefly, and I will represent to the court that there's nothing in the record that's going to establish that Mr. Durth, at any time before these hearings, believed that Julie thought he was to pay her expenses. The parties- Is there anything in this record which would show that before the fall of 2009, Julie claimed or believed that Donald was supposed to pay her expenses? Judge, I do not believe there is. And I believe- How about the testimony at the 2009 hearing? Judge, I don't believe the transcript is going to support that. And I recall what we- my client was not aware that that was a claim until even after we received the April 2009 pleading, where they filed a petition for contempt of Mr. Durth for- the pleading only said for monies owed for transportation. Even the pleading didn't set out the fact that they were contending that he owed half of her monies too. It was not until the course of discovery, there were no demands, and I will represent to this court, there were no demands prior to that indicating that that was a position that was being taken. Again, until the course of discovery and after the April 2009 pleading, there was no bullying by Mr. Durth. Mr. Durth did believe that Julie should have hesitation and he encouraged that. Was the reason for this whole start of this transaction or court order was it with respect to his demand for half the medical? Yes, Your Honor, and I believe that's what opened the door. We had filed a pleading for approximately, I think it was $13,000, anywhere from $12,000 to $14,000 in medicals, which he believed she owed $7,000. And then the issue came up of him owing her half of the travel expenses. Unless the court has questions. Thank you, Your Honor. Thank you. We'll take this member and advise him to be in recess.